**Janice NYFLOT, Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. C5-84-2030.

Court of Appeals of Minnesota.

March 26, 1985.

Review Granted April 5, 1985.

Samuel A. McCloud, Minneapolis, Brian D. Roverud, Frundt, Frundt & Johnson, Blue Earth, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

POPOVICH, Chief Judge.

Appellant Janice Nyflot appeals the trial court's order sustaining the Commissioner of Public Safety's revocation of her driving privileges for refusing to submit to chemical testing under the implied consent law, Minn.Stat. § 169.123 (1984). Appellant claims she was denied her right to consult an attorney when she was asked to submit to chemical testing. She was told that under the new 1984 law she had no such right. We reverse and hold that under the 1984 legislation, a right to consult an attorney still exists.

## FACTS

Appellant was arrested for D.W.I. about 1:30 a.m. on September 23, 1984 near Albert Lea, Minnesota. As soon as she was arrested, appellant demanded an attorney. She was read the implied consent advisory and when asked if she would submit to the test, she stated she would not do anything until she spoke with her attorney. She was advised that under the new law she no longer had that option. She was told to make the decision on her own and that she could not call an attorney until after she had taken the test or decided not to take the test. Appellant decided not to take the test. Appellant's driving privileges were revoked. Following her petition for judicial review, the trial court sustained the revocation.

## ISSUE

When arrested for D.W.I. and requested to take a chemical test under the implied consent law, does a person have a right to consult an attorney prior to testing?

## ANALYSIS

1. The Minnesota Supreme Court recognized a "limited" right to counsel for drivers required to decide whether to submit to a chemical test of blood alcohol content in *Prideaux v. State Department of Public Safety,* 310 Minn. 405, 247 N.W.2d 385 (1976). This right to counsel was based on

Minn.Stat. § 481.10 and the supreme court's reluctance to believe "the legislature intended a blanket denial of right to counsel in implied-consent situations." *Id.* at 414, 247 N.W.2d at 391.

In 1984, the legislature apparently attempted to restrict the right to counsel in implied consent situations; but it changed only the implied consent advisory, which must be read to persons at the time a chemical test is requested, as follows:

(1) that Minnesota law requires the person to take a test to determine if the person is under the influence of alcohol or a controlled substance;

(1)(2) that if testing is refused, the person's right to drive will be revoked for a minimum period of ~~six months~~ one year or, if the person is under the age of 18 years, for a period of one year or until he or she reaches the age of 18 years, whichever is greater;

(2)(3) that if a test is taken and the results indicate that the person is under the influence of alcohol or a controlled substance, the person will be subject to criminal penalties and the person's right to drive may be revoked for a minimum period of 90 days or, if the person is under the age of 18 years, for a period of six months or until he or she reaches the age of 18 years, whichever is greater;

~~(3) that the person has a right to consult with an attorney but that this right is limited to the extent that it cannot unreasonably delay administration of the test or the person will be deemed to have refused the test; and~~

(4) that after submitting to testing, the person has the right to consult with an attorney and to have additional tests made by a person of his own choosing; and

(5) that if he refuses to take a test, the refusal will be offered into evidence against him at trial.

1984 Minn.Laws ch. 622, § 10 [1].

2. The Commissioner of Public Safety claims these changes (1) eliminate a driver's right to consult an attorney before testing, (2) overruled *Prideaux,* and (3) repealed Minn.Stat. § 481.10 as it applies to D.W.I. suspects. There are several problems with this argument.

[1] (1) The legislature merely changed the implied consent *advisory;* it did not change the substantive law the implied consent advisory was based on. Changing what an officer must tell the person does not change the person's rights. The changes may show what the legislature intended to do. Without corresponding substantive changes, however, the advisory is an incorrect statement of the law. The Commissioner of Public Safety argues the legislature did not intend officers give incorrect information to drivers and that such an interpretation of the statute creates an absurd result. *See* Minn.Stat. § 645.17(1) (1984). However, we "cannot supply that which the legislature purposely omits or inadvertently overlooks." *Northland Country Club v. Commissioner of Taxation,* 308 Minn. 265, 271, 241 N.W.2d 806, 809 (1976). The failure of the legislature to explicitly deny the right to counsel prior to chemical testing prevents us from agreeing with the Commissioner. Minn. Stat. § 481.10 cannot be construed to be repealed by implication. Minn.Stat. § 645.39 (1984).

(2) The new advisory states that after submitting to testing, the person has the right to consult with an attorney. It is unclear whether a person who refuses testing has a similar right. To the average person, this advisory is confusing at best. It is also confusing to tell a person on one hand testing is required, but on the other hand the driver does not have to submit to testing.

(3) Had the legislature intended a blanket denial of the right to counsel, such denial may be in violation of the constitutional right to counsel before deciding whether to consent to testing. In *Prideaux,* the court analyzed this issue and concluded there was a constitutional right

---

**1.** Changes or additions are indicated by under-line, deletions by strikeout.

to counsel, although it declined to rest its decision on constitutional grounds. The constitutional analysis in *Prideaux* is still viable.

The *Prideaux* court initially found our implied consent law is:

necessarily and inextricably intertwined with an undeniably criminal proceeding—namely, prosecution for driving while under the influence of an alcoholic beverage. * * * Under these circumstances, we cannot see why evidence gathering for prosecution for driving under the influence using implied-consent procedures is any less subject to constitutional scrutiny than other evidence-gathering procedures such as searches, use of informers, or custodial interrogation.

*Prideaux*, 310 Minn. at 409–10, 247 N.W.2d at 388–89.

*Prideaux* discussed the devastating impact a six month driver's license revocation may have on an ordinary driver. The Minnesota Supreme Court's statement in *Prideaux* is equally applicable to the new one year revocation.

3. The crux of *Prideaux* was its recognition that "the decision whether to take or refuse chemical testing is arguably a 'critical stage' in the driving-under-the-influence proceeding." *Id.* at 411, 247 N.W.2d at 389.

■ Traditionally, the sixth amendment right to counsel does not attach until a critical stage in the proceeding. *See generally Coleman v. Alabama*, 399 U.S. 1, 7, 90 S.Ct. 1999, 2002, 26 L.Ed.2d 387 (1970).

Whatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him—"whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."

*Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972)).

That statement * * * does not foreclose the possibility that the right to counsel might under some circumstances attach *prior* to the formal initiation of judicial proceedings * * *.

*United States v. Gouveia*, —— U.S. ——, ——, 104 S.Ct. 2292, 2300, 81 L.Ed.2d 146 (1984) (Stevens, J., concurring) (emphasis added); *see Escobedo v. Illinois*, 378 U.S. 478, 486, 84 S.Ct. 1758, 1762, 12 L.Ed.2d 977 (1964) (sixth amendment right to counsel attaches during interrogation by police). *Prideaux* recognized that under Minnesota's implied consent law and criminal laws forbidding driving while under the influence, the post-arrest decision dealing with submission to a chemical test may be the most critical of all stages since it virtually determines the outcome of subsequent trials.

The *Prideaux* court characterized the decision about testing as a critical stage because the driver's consent is a major factor in the State's criminal prosecution against him for D.W.I. By refusing to consent to testing, criminal prosecution may be more difficult. *Prideaux* recognized the decision is also important to the driver because of the concept of reasonable refusal.

[T]he driver who is requested to submit to chemical testing might not know that he can reasonably refuse the test in certain circumstances where the officer did not have reasonable ground for arrest or for requesting the test, did not properly inform the driver of his rights, or confused the driver as to his rights. Moreover, depending upon the individual driver's circumstances, the decreased possibility of criminal conviction may be worth the 6-month loss of his license if he does not depend on his driver's license for his livelihood. If the driver was involved in an accident resulting in death, he might face more serious criminal proceedings in which the test results could be important evidence against him. In the above instances, and others we cannot immediately foresee, a driver requested to submit to testing might want

to seriously consider refusing the test. While such situations may be rare, they are certainly not impossible or even highly improbable. When those situations do arise, the driver must make a critical and binding decision regarding chemical testing which will affect him in subsequent proceedings. This decision is just as critical and just as binding as a decision regarding whether to make a verbal statement, which is one zealously protected by current case law. A driver ought to have the assistance of his own counsel in making the decision about whether to refuse testing.

Even in the vast majority of cases in which competent counsel would advise his client to take the test, the valuable right to counsel is not wasted. An arrested driver may be confused, dazed, and suspicious of the arresting officer, not only because of the possible influence of alcohol, but perhaps because of injury due to accident, and other reasons. Where the important chemical-testing procedures are not unreasonably delayed or impaired, the driver should have the benefit of the knowledgeable advice of his own counsel, who may assure him that the officer's statements about his rights and obligations are correct. The recognition of such a right will encourage compliance with the chemical-testing procedures in an atmosphere of fundamental fairness.

*Prideaux*, 310 Minn. at 412–13, 247 N.W.2d at 390 (citations omitted). This reasoning is equally applicable under the 1984 law.

4. The Commissioner argues that under the 1984 legislation, testing is now mandatory and there is no right to refuse testing. As such, the Commissioner contends the demand for testing is not a "critical stage" and is analogous to other nonconsensual, warrantless takings of evidence from a suspect. 1984 Minn. Laws ch. 622, § 13 changed the language from "offering" to "requiring" a test, in Minn.Stat. § 169.123, subd. 5a where the peace officer is deemed an agent of the Commissioner of Public Safety for purposes of the notice of revocation. This change reflected the legisla-

ture's intent to make testing "mandatory" for those suspected of driving under the influence as stated in the preamble to chapter 622. However, the issue is clouded by discussions of "right to refuse."

The legislature retained the concept of refusal, *see* Minn.Stat. § 169.123, subd. 4 (1984), and the defense of reasonable refusal. *See* Minn.Stat. § 169.123, subd. 6 (1984). The penalty for refusal to permit a test was increased from six months driver's license revocation to one year. *See* 1984 Minn. Laws ch. 622, § 12. Evidence of the refusal to take a test is admissible in a criminal prosecution for D.W.I. *See* Minn. Stat. § 169.121, subd. 2 (1984). The nature of a driver's decision whether to submit to testing is still critical and binding.

We cannot take seriously the Commissioner's contention that when a driver is asked to submit to chemical testing that he is not "faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." *Kirby*, 406 U.S. at 689–90, 92 S.Ct. at 1882–83. A driver is usually given a charging document (uniform traffic ticket or tab charge) by the officer regardless of the driver's decision about submitting to testing. The advice of counsel at the time a driver is asked to submit to testing is crucial because of the ramifications such a decision entails.

5. The "civil" label attached to implied consent proceedings is not dispositive. *Prideaux*, 310 Minn. at 409, 247 N.W.2d at 388. In *Hepfel v. Bashaw*, 279 N.W.2d 342 (Minn.1979), for example, the Minnesota Supreme Court established a right to counsel in paternity proceedings although a paternity action is civil. *Id.* at 344. Likewise, in *Cox v. Slama*, 355 N.W.2d 401 (Minn.1984), the court established the right to counsel for persons facing civil contempt for failure to pay child support when incarceration is a real possibility. *Id.* at 403.

We are aware that our decision is in conflict with decisions in other jurisdictions, but we are persuaded that our result is fundamentally fair and is in accord with

the opinions of the Minnesota Supreme Court in *Prideaux, Hepfel,* and *Cox.*

## DECISION

Even under the 1984 legislative amendments to the implied consent law, any person required to decide whether to submit to a chemical test of his blood alcohol content has the limited right to consult with an attorney of his own choosing before making the decision, so long as the consultation does not unreasonably delay testing.

Reversed.