### DECEMBER 16, 1985

No. 85–636.  NYFLOT *v.* MINNESOTA COMMISSIONER OF PUBLIC
SAFETY.  Appeal from Sup. Ct. Minn. dismissed for want of sub-
stantial federal question.

JUSTICE WHITE, with whom JUSTICE STEVENS joins,
dissenting.

Shortly after 1:30 o'clock on the morning of September 23, 1984,
appellant Janice Nyflot was arrested for driving under the influ-
ence of alcohol.  She immediately requested that she be allowed
to speak with an attorney, but this request was denied.  She was
then taken to the local law enforcement center.  There, she was
advised that state law required that she be tested to determine if
she was under the influence of alcohol or a controlled substance
and that refusal to allow such a test would result in her driver's
license being revoked for a minimum of one year.  She was

further advised that refusal to take the test could be offered in evidence against her at trial. Finally, she was told that if she consented to the test and the test indicated that she was under the influence of alcohol or a controlled substance, she would be subject to criminal prosecution and her right to drive could be revoked for a minimum of 90 days. And she was advised that she had the right, *after* submitting to the testing, to consult with an attorney and to have additional tests done by someone of her own choosing. These admonitions complied with the advice requirements of the state implied consent statute. See Minn. Stat. § 169.123, subd. 2(b) (1984).

After being thus advised, Nyflot informed the police officer that she would not submit to testing without first speaking to an attorney. She was again told that she would not be allowed to speak with an attorney before deciding whether to take the test. She again declined to consent to the test. The police officer then informed her that she had effectively refused the test and allowed her to contact her attorney. Immediately after contacting her attorney, she indicated her willingness to take the test, but she was told that she had been deemed to have refused it and could no longer consent. Her license was then revoked for one year based on her refusal.

The state trial court upheld the revocation against Nyflot's challenge that she had a right to counsel for the purpose of determining whether to consent to the blood alcohol test, which right had been unconstitutionally denied. The Minnesota Court of Appeals reversed, holding that a limited right to counsel was provided by state law. 365 N. W. 2d 266 (1985). The Minnesota Supreme Court, with two justices dissenting, reversed again and upheld the revocation. 369 N. W. 2d 512 (1985).

The Minnesota Supreme Court first rejected the Court of Appeals' conclusion that a right to counsel in this situation was provided by state law. Then, turning to Nyflot's federal constitutional challenge, the court held that no Sixth Amendment right to counsel extended to the decision whether to consent to testing. The court reasoned that *Kirby* v. *Illinois*, 406 U. S. 682 (1972), concluded that "the Sixth Amendment right to counsel did not attach until judicial proceedings are formally commenced (by indictment, complaint or substitute for complaint)." 369 N. W. 2d, at 516. See also *United States* v. *Gouveia*, 467 U. S. 180 (1984). Although acknowledging that this Court has recognized exceptions

to this rule for the purposes of protecting a defendant's Fifth Amendment rights, see, *e. g., Miranda* v. *Arizona,* 384 U. S. 436 (1966), the Minnesota Supreme Court concluded that this Court "is unlikely to find other situations requiring a triggering of the right to counsel before the formal initiation of a criminal prosecution" and that "[i]t is also clear that the right to counsel recognized in *Miranda* does not apply to the limited questioning of a driver to determine if he will consent to a chemical test." 369 N. W. 2d, at 516 (citing *South Dakota* v. *Neville,* 459 U. S. 553, 564 n. 15 (1983)).

Nyflot now appeals, claiming that she had a Sixth Amendment right to counsel with respect to the decision whether to consent to the blood alcohol test. She asserts that in the special context of a driving-while-intoxicated offense, formal proceedings must be considered to have commenced with the issuance of a traffic ticket, which is in essence a summons to appear in court and the functional equivalent of a complaint. Since the ticket could be given *before* the test (because the driver is not taken in for testing unless she is unable to pass field sobriety or breath tests), the actual police procedures may not be manipulated so as to change the time when adversary proceedings are considered to have begun. Thus, adversary proceedings should be deemed to have been initiated before the test. The right to counsel having attached, Nyflot then argues that the decision whether to consent to the test is a "critical stage" in the proceeding, since it in essence is a decision as to what type of evidence will be available to be used against the driver—the results of the test or the refusal to consent to it. See *Gouveia, supra,* at 189.

Most of the courts that have considered this issue have rejected the argument that the Sixth Amendment right to counsel covers the stage at which the decision whether to consent to the blood alcohol test must be made. See, *e. g., Sites* v. *State,* 300 Md. 702, 711, 481 A. 2d 192 (1984) (collecting cases). A few, however, have found that the Sixth Amendment right to counsel does extend to this stage. See, *e. g., Heles* v. *South Dakota,* 530 F. Supp. 646 (SD), vacated as moot, 682 F. 2d 201 (CA8 1982); *Forte* v. *State,* 686 S. W. 2d 744 (Tex. App.), review granted by Tex. Ct. App., Oct. 23, 1985, No. 2–84–012–Cr.; *State* v. *Welch,* 135 Vt. 316, 376 A. 2d 351 (1977) (superseded by state statutory right to counsel, see *State* v. *Duff,* 136 Vt. 537, 394 A. 2d 1145 (1978)). Other courts have found a right to counsel based on state law,

see, *e. g.*, *State* v. *Fitzsimmons*, 94 Wash. 2d 858, 620 P. 2d 999 (1980), or on general due process guarantees, see, *e. g.*, *State* v. *Newton*, 291 Ore. 788, 636 P. 2d 393 (1981) (en banc plurality).

Given these varying results, I would note probable jurisdiction to settle the question presented.