Philippe Serge **LANGELIER**,
Petitioner–Appellant,

v.

Gerry **COLEMAN**, Sheriff of Pinellas County, Robert A. Butterworth, Attorney General, State of Florida, and Richard L. Dugger, Sec., Dept. of Corrections, State of Florida, Respondents–Appellees.

No. 88–3124.

United States Court of Appeals,
Eleventh Circuit.

Dec. 20, 1988.

---

1. Like the district court, we express no opinion on the trial court's interpretation of Florida law.

Ronnie G. Crider, Alan K. Smith, Clearwater, Fla., for petitioner-appellant.

Gary O. Welch, Davis G. Anderson, Jr., Asst. Attys. Gen., Tampa, Fla., for respondents-appellees.

Before VANCE and KRAVITCH, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

The issue in this case is whether an application of Florida's implied consent law, § 316.1932, Fla.Stat. (1987), violated a driver's constitutional rights, where the police assumed that the driver's unwillingness to undergo a blood alcohol test before speaking with an attorney was a refusal to submit to such test. Because we do not recognize the constitutional rights asserted by the driver, we affirm the district court's order denying habeas corpus relief.

A Belleair, Florida police officer stopped Philippe Serge Langelier, the petitioner-appellant, on suspicion of driving under the influence of alcohol (DUI) in the early morning hours of March 28, 1985. At the officer's request, Langelier performed various field sobriety tests at the scene. In the opinion of the officer, Langelier failed these tests. Arresting Langelier for DUI in violation of § 316.193(1), Fla.Stat. (1987),[1] the officer escorted him to the Largo, Florida police department for the purpose of conducting an additional field sobriety test as well as a chemical analysis designed to determine the concentration of alcohol in Langelier's blood. At the station, an officer licensed to operate an intoxilizer—a device which measures blood alcohol level—asked Langelier whether he would submit to a field sobriety test while being filmed by a video camera. In response Langelier requested permission to contact an attorney, and the Largo police officer then recited the *Miranda* warning. See *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Langelier again asked to speak with an attorney. The officer then read from a plaque[2] on

---

1. Section 316.193 states that:
   (1) A person is guilty of the offense of driving under the influence and is subject to punishment as provided in subsection (2) if such person is driving or in actual physical control of a vehicle within this state and:
   (a) the person is under the influence of alcoholic beverages ... when affected to the extent that his normal faculties are impaired; or
   (b) the person has a blood alcohol level of 0.10 per-cent or higher.

2. The plaque contained the following message:
   By accepting the privilege extended by the laws of this State of operating a motor vehicle within this State, you are deemed to have given your consent to submit to an approved chemical test of your breath with the purpose of determining the alcohol content of your blood and to a urine test with the purpose of detecting the presence of controlled substances. I am now requesting that you submit to a breath test. Your failure to submit to

the wall which summarized Florida's implied consent law. The statute provides that licensed drivers in the state of Florida are deemed to have consented to undergo approved blood alcohol tests. A driver may refuse, but doing so will result in a suspension of the driving privilege, and the state may admit into evidence in any criminal proceeding the fact of the refusal to submit to the test upon request. Although the statute is silent as to the right to counsel, the officer told Langelier that he had no right to an attorney before undergoing the test. Langelier indicated that he would take the test after speaking with his attorney. After three readings of the implied consent law failed to draw a consent from Langelier, the officer recorded that Langelier had refused to take the blood alcohol test. Langelier was tried and convicted in July, 1985, and his conviction was affirmed on appeal. In December, 1986, Langelier petitioned the district court for a writ of habeas corpus. The district court, acting upon a report and recommendation by a United States magistrate, denied habeas corpus relief on January 22, 1988. This appeal followed.

Langelier maintains that the first amendment, the due process clause, and the constitutional right to privacy guaranteed him the right to consult with counsel prior to consenting to undergo a blood alcohol test.

He asserts no fifth or sixth amendment claims.[3] Langelier does not argue that the Florida implied consent statute is unconstitutional on its face, nor does he contend that the evidence of his constructive refusal should have been suppressed according to exclusionary principles. Summarily stated, Langelier's argument is (1) he had, by virtue of either free speech, due process, or the right to privacy, a constitutional right to speak with an attorney before deciding whether or not to consent to the blood alcohol test; (2) therefore, the condition that he placed on his consent—that he first be allowed to consult with counsel—was not only lawful but constitutionally guaranteed; and (3) the state's characterization of his lawful request as a constructive refusal, and the prosecutor's use of the refusal at his trial, was fundamentally unfair and violated due process.

With one exception, no federal court to date has acknowledged the constitutional right to counsel asserted by Langelier. And the exception, *Heles v. South Dakota*, 530 F.Supp. 646, 652 (D.S.D.), *vacated as moot, death of the appellant*, 682 F.2d 201 (8th Cir.1982), which recognized a due process right to counsel attaching prior to a driver's decision whether to submit to a blood alcohol test, is not binding on any court, a point Langelier concedes. See,

---

this test will result in suspension of your privilege to operate a motor vehicle for a period of six months if it is your first refusal or for a period of one year if your driving privilege has been previously suspended as a result of a refusal to submit to such test or tests. If you refuse, your refusal to submit to this test will be admissible in evidence in any criminal proceeding arising out of this offense.

3. And he has none to assert. Neither the fifth amendment privilege against self-incrimination nor the due process clause prohibits the state from compelling a suspect to submit to blood testing. *Schmerber v. California*, 384 U.S. 757, 759–61, 86 S.Ct. 1826, 1829–31, 16 L.Ed.2d 908, 913–14 (1966). Also, a refusal to undergo testing following an officer's lawful request is not a product of coercion, and therefore refusal is not protected by the privilege against self-incrimination. *South Dakota v. Neville*, 459 U.S. 553, 564, 103 S.Ct. 916, 923, 74 L.Ed.2d 748, 759 (1983). Moreover, such a refusal enjoys no *Miranda* protection beyond basic fifth amendment protection. *Id.* at 564 n. 15, 103 S.Ct. at 923 n. 15,

74 L.Ed.2d at 759 n. 15 ("police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*"). The sixth amendment right to counsel does not attach until the initiation of adversary criminal proceedings, *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411, 417 (1972) (plurality opinion of Stewart, J.), "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *United States v. Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146, 154 (1984) (citing *Kirby*, 406 U.S. at 688, 92 S.Ct. at 1882, 32 L.Ed.2d at 417). Here, Langelier was asked to submit to testing after his arrest, but before the beginning of adversary criminal proceedings. See *State v. Hoch*, 500 So.2d 597, 599 (Fla. 3d DCA 1986), *review denied*, 509 So.2d 1118 (1987); Rule 3.140(a), Fla.R.Crim.P. Thus, Langelier's sixth amendment right to counsel yet had not been implicated when he was presented the option of whether to undergo testing.

e.g., *United States v. Pauline,* 625 F.2d 684 (5th Cir.1980) (when defendant dies pending direct appeal of criminal conviction, all proceedings had in the prosecution from its inception are abated).[4]

Moreover, the Supreme Court may have rejected Langelier's constitutional arguments in *Nyflot v. Minnesota Commissioner of Public Safety,* 474 U.S. 1027, 106 S.Ct. 586, 88 L.Ed.2d 567 (1985). The parties here vigorously dispute the precedential effect of that case, in which the Supreme Court dismissed an appeal from the Minnesota Supreme Court for want of a substantial federal question. In *Nyflot* the Minnesota Supreme Court had rejected contentions that the due process clause and the sixth amendment guaranteed a right to counsel which extended to the decision whether to consent to testing. *Nyflot v. Commissioner of Public Safety,* 369 N.W.2d 512, 516–17 (Minn.1985). Langelier acknowledges that the Supreme Court's dismissal of the appeal in *Nyflot* operated as an adjudication of that case on the merits which has a binding precedential effect on other cases. Dismissals for want of a substantial federal question "do prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions." *Mandel v. Bradley,* 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199, 205 (1977). However, Langelier urges that the first amendment, due process and right to privacy issues he is claiming here were not reached by the Supreme Court in disposing of the appeal in *Nyflot.* The state comes to the opposite conclusion, insisting that *Nyflot* is controlling authority with respect to the due process claim.

Determining the proper weight of authority to be afforded the *Nyflot* decision is not necessary here. Assuming arguendo that the *Nyflot* decision leaves the due

process question unresolved, the Court's disposition of the case certainly offers no support for the propositions advanced by Langelier, because summary dispositions "should not be understood as breaking new ground...." *Id.* The absence of any federal authority [5] in support of a right to counsel grounded in the due process clause undercuts Langelier's argument. We are mindful of the Supreme Court's reluctance "to discover new fundamental rights embedded in the Due Process Clause. The Court is most vulnerable and comes nearest to illegitimacy when it deals with judge-made constitutional law having little or no cognizable roots in the language or design of the Constitution." *Bowers v. Hardwick,* 478 U.S. 186, 194, 106 S.Ct. 2841, 2846, 92 L.Ed.2d 140, 148, *reh. denied,* 478 U.S. 1039, 107 S.Ct. 29, 92 L.Ed.2d 779 (1986).

Langelier's asserted right to counsel finds no textual support in the fourteenth amendment, and, as pointed out *supra,* in note 3, the right to counsel grounded in specific provisions of the Bill of Rights, made applicable to the states through the due process clause of the fourteenth amendment, offers no protection. Therefore, if we are to find the due process right to counsel urged upon us by Langelier, it must fit within one of the Supreme Court's formulations of "fundamental rights." The Court recently summarized its position on fundamental liberties.

Striving to assure itself and the public that announcing rights not readily identifiable in the Constitution's text involves much more than the imposition of the Justices' own choice of values on the States and the Federal Government, the Court has sought to identify the nature of the rights qualifying for heightened judicial protection.... [T]his category includes those fundamental liberties that are 'implicit in the concept of ordered

---

4. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

5. A few state courts have found that due process guarantees a suspect a reasonable opportunity to consult with counsel before consenting to a blood alcohol test. E.g., *Troy v. Curry,* 36 Ohio

Misc. 144, 303 N.E.2d 925 (Athens Co.Mun.Ct. 1973); *Bunten v. Motor Vehicles Division, State of Oregon,* 55 Or.App. 515, 639 P.2d 135 (1982). We note, however, that Florida courts have declined to find such a right. *Hoch,* 500 So.2d at 600; *accord, Nelson v. State,* 508 So.2d 48 (4th DCA 1987).

liberty,' such that 'neither liberty nor justice would exist if [they] were sacrificed.' ... [T]hey are [also] characterized as those liberties that are 'deeply rooted in this Nation's history and tradition.'

*Hardwick*, 478 U.S. at 191–92, 106 S.Ct. at 2844, 92 L.Ed.2d at 147 (citations omitted).

We cannot say with any conviction that the continuing existence of liberty and justice depends upon the creation of a due process right to counsel prior to undergoing a chemical blood test. Langelier's interpretation of the due process clause lacks merit.

Similarly, Langelier's first amendment and right to privacy arguments must meet the same fate. He cites no authority in support of his theory that the state, in refusing him permission to call an attorney prior to undergoing a blood test, unreasonably restricted his freedom of speech.[6] Langelier's right to privacy argument is likewise devoid of support in federal law.[7] In short, he is asking us to create new constitutional rights. We decline the invitation.

6. Langelier misperceives the scope of the first amendment protection afforded speech. The guarantee of free speech is not absolute; the first amendment does not confer upon citizens "an unlimited license to talk." *Konigsberg v. State Bar of California*, 366 U.S. 36, 50, 81 S.Ct. 997, 1006, 6 L.Ed.2d 105, 117, *rehearing denied*, 368 U.S. 869, 82 S.Ct. 21, 7 L.Ed.2d 69 (1961). Rather, state action "not intended to control the content of speech but incidentally limiting its unfettered exercise" is not forbidden by the first amendment or the fourteenth amendment, where "justified by subordinating valid governmental interests, a prerequisite to constitutionality which has necessarily involved a weighing of the governmental interest involved." *Id.* at 50–51, 81 S.Ct. at 1007, 6 L.Ed.2d at 116–17. Here, Florida's practice of refusing to permit persons suspected of DUI to contact attorneys before deciding whether to submit to testing clearly does not regulate the content of speech. Moreover, the Supreme Court has "traditionally accorded the states great leeway in adopting summary procedures to protect public health and safety." *Mackey v. Montrym*, 443 U.S. 1, 17, 99 S.Ct. 2612, 2620, 61 L.Ed.2d 321, 334 (1979). Thus, Florida's "compelling interest in highway safety justifies" its practice. *Id.* at 19, 99 S.Ct. at 2612, 61 L.Ed.2d at 335. In *Mackey*, the Court

Accordingly, the order of the district court is

AFFIRMED.

upheld Massachusetts' implied consent law over a challenge that the state's failure to provide a hearing prior to the summary suspension of a suspect's license for refusal to consent to a breath analysis test violated due process. The Court explained that "[a] presuspension hearing would substantially undermine the state interest in public safety by giving drivers significant incentive to refuse the breath-analysis test and demand a presuspension hearing as a dilatory tactic." *Id.* at 18, 99 S.Ct. at 2621, 61 L.Ed.2d at 334–35. A similarly irresistible opportunity for delay would be presented by a requirement that suspects be allowed to call lawyers before undergoing testing. Such delay would defeat the state's interest in obtaining reliable evidence of intoxication because the concentration of alcohol in the blood becomes diluted with the passage of time.

7. Langelier's contention that chemical blood testing performed during an incommunicado detention violates personal privacy borders on the bizarre. Langelier's concept of privacy goes well beyond the scope of the constitutional right announced by the Court. That constitutional right concerns matters relating to marriage, family and procreation. *Hardwick*, 478 U.S. at 191, 106 S.Ct. at 2844, 92 L.Ed.2d at 145–46.