## STATE OF FLORIDA v SCHNEIDER and STATE OF FLORIDA v HERNANDEZ

Case Nos. 49640,39-IE and 92787, 88-CC

Eleventh Judicial Circuit, Criminal Division, Dade County

January 31, 1989

### APPEARANCES OF COUNSEL

**Linda Johnston,** Assistant State Attorney, for plaintiff.

**Milton Ferrell,** Ferrell, Williams, P.A., for defendants.

### OPINION OF THE COURT

JEFFREY ROSINEK, County Court Judge.

ROY T. GELBER, County Court Judge.

This cause came before us upon the consolidated oral arguments of the Defendants, WILLIAM E. SCHNEIDER and HOSEY HERNANDEZ'S Motion to Suppress Statements, Videotape and Incorporated Memorandum of Law, and after argument of counsel and having been fully apprised, it is hereby

ORDERED and ADJUDGED as follows:

*Findings of Fact as to Defendant, William E. Schneider*

The Defendant, WILLIAM E. SCHNEIDER, was arrested after a stop for failure to drive within a single lane. After the stop, the arresting Officer, Trooper Harold B. Smith of the Florida Highway Patrol allegedly first observed the Defendant sway back and forth and smelled an odor of alcohol on the Defendant's breath. After a brief encounter during in which the Defendant, SCHNEIDER was asked to participate in a road side sobriety test, Trooper Harold B. Smith, placed the Defendant, WILLIAM E. SCHNEIDER, under arrest. During the arrest Trooper Harold B. Smith read to the Defendant, SCHNEIDER the implied consent law and Miranda warnings, at which time the Defendant requested to speak to his attorney. The Defendant informed Trooper Harold B. Smith, that his attorney was Jim Catlin, and requested an opportunity to telephone Mr. Catlin.

Thereafter, the Defendant, SCHNEIDER, was transported by Trooper Harold B. Smith to the police station. At the station the Defendant was denied the use of a telephone with which to attempt to contact his attorney after specifically once again asking permission to do so. Trooper Harold B. Smith, began to follow the flow chart script prepared by the State Attorney's Office[1] despite the Defendant's repeated request to allow him access to a telephone in order to attempt to reach his attorney.

The questioning of the Defendant, SCHNEIDER, by Trooper Harold B. Smith was videotaped. On the desk adjacent to the Defendant, SCHNEIDER and Trooper Harold B. Smith was a telephone. From the very beginning of the videotape the Defendant is heard repeating his request to call attorney James Catlin. After Trooper Smith had read the Defendant the implied consent form, the Defendant once again requested to speak to his attorney prior to answering any questions.

*Findings of Facts as to the Defendant, Hosey Hernandez*

On March 18, 1988, at approximately 2:22 AM, the Defendant, HOSEY HERNANDEZ, was stopped by Officer Debra Phillips of the Metro Dade Police Department for failure to drive within a single lane.

---

[1] The testimony of Trooper Smith was that he was under the duty to utilize the "flow chart script" provided to him. This script was, according to Trooper Smith, prepared by the State Attorney's Office for use in all DUI arrests, and, if followed, does not permit the defendant to contact an attorney until the defendant's interrogation is complete.

**50**

After the stop, the Defendant, HERNANDEZ, along with his female passenger exited the vehicle. It was at this time that Officer Phillips allegedly first observed the Defendant, whom she described as having glassy eyes, slurred speech, and an odor of alcohol on his breath. Following a brief encounter during which the Defendant was asked to participate in a roadside sobriety test, Officer Phillips placed the Defendant, HERNANDEZ, under arrest.

Mr. Hernandez was transported by Officer Phillips to a Metro Dade Sub-Station. Upon the Defendant, HERNANDEZ's arrival, Sergeant C.D. Huges questioned the Defendant, Hernandez in accordance with what has come to be known as the flow chart script.[2] This interrogation was videotaped. The taping session began at approximately 4:15 AM, almost two hours after MR. HERNANDEZ was taken into custody. A transcript of the DUI video reveals that from the very beginning of the interrogation, the Defendant stated that he refused to answer any questions. The DUI video shows that Sergeant Huges did not cease the interrogation, but rather elected to continue the investigation and questioning of the Defendant. During the entire questioning, the Defendant, HOSEY HERNANDEZ, had requested a lawyer and told Sergeant Huges that he would not answer his questions until he had at least attempted to contact his lawyer. At the end of their exchange, Sergeant Huges asked the Defendant to go back to the questions he was asked at the booking area and reiterated the request that the Defendant undergo a urine test. The Defendant again denied the request unless he could first attempt to contact his attorney. Only after Sergeant Huges completed the flow chart script did he end the questioning and the videotape, and allowed the Defendant to use the telephone.

*Findings of Law*

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall have the assistance of counsel for his defense. The Supreme Court of the United States has determined that the Sixth Amendment right to counsel attaches to all critical stages of the criminal proceedings and operates to ensure the accused's right to a fair trial. *United States v Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The purpose underlying the Sixth Amendment "is not to protect a suspect from his own candor, but rather to insure that he is not left to his own devices when facing the 'prosecutorial forces' of the state". *Moran v Burbine,* 475 U.S. —, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986). The right to counsel attaches

---

[2] The flow chart script is identical to the one used to question Mr. Schneider.

**51**

"after the initiation of formal charges". Id., 475 U.S. at —, 106 S.Ct. at 1146, 89 L.Ed.2d at 427.

In the instant case the formal charges of DUI were lodged against MESSIEURS SCHNEIDER and HERNANDEZ when they were cited out on the street for violation of § 316.193, Florida Statutes, for driving under the influence of alcoholic beverage.

In *Nyflot v Minnesota Commissioner of Public Safety,* 474 U.S. 1027, 88 L.Ed.2d 567, 106 S.Ct. 586, (1985), the Supreme Court dismissed the appeal from the Supreme Court of Minnesota, which upheld the revocation of Defendant Nyflot's driving license privilege for refusing to submit to a blood alcohol breath test without first consulting with her attorney . . . "[T]he Minnesota Supreme Court concluded that this Court, 'is unlikely to find other situations requiring a triggering of the right to counsel before the formal initiation of a criminal prosecution' and that '[I]t is also clear that the right to counsel recognized in *Miranda* does not apply to the limited questioning of a driver to determine if he will consent to a chemical test.' 369 NW 2d at 516 (citing *South Dakota v Neville,* 459 U.S. 553, 564 N.15, 74 L.Ed.2d 748, 103 S.Ct. 916 (1983)."

The leading case in this jurisdiction is *State of Florida v Hoch,* 500 So.2d 597 (Fla. App 3d Dist., 1986). The Third District held that the defendant's Sixth Amendment right to counsel does not attach so as to require access to an attorney prior to being required to submit to the State of Florida's implied consent blood-alcohol test. Additionally, the Fifth Amendment and the right to attorney statutes do not require defendant an opportunity to consult with an attorney prior to the blood/alcohol breath test.

In *Hoch,* the Third District cited *State v Newton,* 291 OR. 788, 636 P.2d 393 (1981), and stated that there was not a Fifth Amendment substantive or procedural due process requirement under the U.S. Constitution, the Florida Constitution, and/or Fla. Statute 901.24 mandating that the police permit, if requested, a brief recess prior to the breath test in order to allow the defendant an opportunity, however short, to consult an attorney prior to interrogation and submission to a breath, blood or urine test. Defendants, however, pointed out, that the very reasoning relied on by the Third District in *Hoch* was reversed in *State of Oregon v Spencer,* 750 P.2d 147 (Or. 1988). The facts in *Spencer* were similar to the cases now before this Court. In *Spencer,* the defendant asked whether he could call his attorney before deciding whether to submit to the test. The defendant was told that he could not do so. He then submitted. At the hearing on the motion to

52

suppress the defendant *Spencer* testified that he had the name of an attorney and knew how to contact that attorney, if he had been permitted to do so.

Defendants placed too much weight on the Oregon Supreme Court reversal. *Hoch,* without *Newton,* remains virtually unchanged. The Great Oregon Trail makes no substantive inroads in either the Florida highway system or with the Florida Courts.

In the case at bar, both MR. SCHNEIDER and MR. HERNAN-DEZ requested the opportunity to briefly consult their attorneys before deciding whether to submit to the breath/urine testing. The Defense stated that there was no evidence that this request would have caused a destruction of valuable evidence. Both men were questioned at an office set up for administering tests to determine blood/alcohol levels. Telephones were at hand, available to both Defendants, and MR. SCHNEIDER told his arresting officer that he wanted the advice of counsel before deciding whether to submit to a chemical test. He told Trooper Smith after being read the implied consent law: "without an attorney, I can't understand that". On the street at the time of arrest the Defendant, WILLIAM E. SCHNEIDER continuously requested to speak to his attorney. This request was interpreted by Trooper Smith to be a refusal to submit to a chemical test. Similarly, MR. HERNAN-DEZ requested the advice of counsel prior to deciding whether to submit to testing.

In *State v Carlin,* 15 Fla. Supp.2d 71 (Fla. 17th Cir. Ct. 1986), the foregoing was also raised. The Circuit Court, stages, at p. 75, "To this Court, it seems that the entire issue now under discussion could have been avoided by the simple expedient of the arresting officer granting the accused the opportunity to attempt to call her attorney during the twenty minutes needed for the observation discussed above. The other side of the coin, of course, is that the accused could have avoided the entire issue by simply not attempting to operate a motor vehicle after having consumed alcoholic beverages."

The *Hoch* case, which was decided subsequent to *Carlin,* summarily dismissed the Circuit Court Judge's decision by saying . . . "we expressly disapprove" the rationale of *Carlin* (where the Court attempted to harmonize both the implied consent and Fla. Stat. 901.24 and found a right to counsel existed) and virtually state it was "no longer good law." Counsel for the defendants stated that both MR. SCHNEIDER and MR. HERNANDEZ were denied their right to counsel at the most critical stage of the proceedings: when the State was gathering evidence to use against each Defendant. The Defendants

also were denied even the opportunity to attempt to contact counsel however briefly. The state presented no evidence to show that they would have been prejudiced by allowing the Defendants to make a brief call. Fundamental fairness demands that persons who are arrested, charged with a crime and in police custody be given at the very least a reasonable opportunity to contact their attorney so as to enable them to make informed decisions.

Counsel's "Fundamental Fairness" argument is akin to those arguments raised in *Langelier v Coleman,* 2 FLW Fed C1546 (Dec. 20, 1988).

In the *Langelier* case, the Defendant maintained that the First Amendment, due process clause, and the Constitutional right of privacy guaranteed him the right of counsel prior to taking the blood-alcohol test. He asserted no Fifth or Sixth Amendment claims,[3] but instead, as part of his argument stated, "[t]he state's characterization of his lawful request as a constructive refusal, and the prosecutor's use of the refusal at his trial, was fundamentally unfair and violated his due process."

The U.S. Eleventh Circuit concluded on p. C1647, "We cannot say with any conviction that the continuing existence of liberty and justice depends upon the creation of a due process right prior to undergoing a chemical blood test. Langelier's interpretation of the due process clause lacks merit." Here too, in Schneider and Hernandez cases, we find there is no merit to the fundamental fairness argument of due process.

The Court's role is not to expand on that which is in the legislature's domain. Though this Court might feel that in these instant cases, no harm would have occurred if Messieurs Schneider and Hernandez had been given the opportunity to call their respective attorneys, this Court believes that such an order would be a true invasion of the legislative branch of government. The Florida legislature enacted the present implied consent law subsequent to the enactment of Fla. Statute 901.24, which provides, "a person arrest shall be allowed to consult with an attorney . . . alone and in private at the place of custody, as often and for such periods of time as is reasonable."

It is apparent to this Court that the adoption of the implied consent

---

[3] In its footnote 3 on p. C1647, the Court stated, "and he had none to assert." Here, Langelier was asked to submit to testing after his arrest, but before the beginning of adversary criminal proceedings. See *State v Hoch,* 500 So.2d 597, 599 (Fla. 3d DCA 1986), review denied, 509 So.2d 1118 (1987); Rule 3.140(a), Fla.R.Crim.P. Thus, Langelier's Sixth Amendment right to counsel yet had not been implicated when he was presented the option of whether to undergo testing.

54

law was enacted to supercede Fla. Statute 901.24. If not, the legislature would have so indicated.

For the foregoing reasons, we concur with *State v Hoch,* 500 So.2d 597 (Fla. 3d DCA 1986), and deny the Defendants' Motion to Suppress Statements and Videotape.

DONE AND ORDERED this 31st day of January, 1989 at Miami, Dade County, Florida.