683 P.2d 516

STATE of New Mexico,
Plaintiff-Appellee,

v.

Timothy SANDOVAL,
Defendant-Appellant;

STATE of New Mexico,
Plaintiff-Appellant,

v.

Tony BARRERAS, Defendant-Appellee.

Nos. 7452, 7453.

Court of Appeals of New Mexico.

May 10, 1984.

**400**

Paul G. Bardacke, Atty. Gen., Santa Fe, Stephen A. Slusher, Deputy Dist. Atty., Harry Zimmerman, Asst. Dist. Atty., Albuquerque, for plaintiff-appellee and for plaintiff-appellant.

Janet Clow, Chief Public Defender, Katherine Pettit, Asst. Appellate Defender, Santa Fe, for defendant-appellant/Sandoval and for defendant-appellee/Barreras.

## OPINION

BIVINS, Judge.

Defendant Sandoval appeals from a second offense conviction of driving while under the influence of intoxicating liquor (DWI) in violation of NMSA 1978, § 66–8–102(E) (Cum.Supp.1983), claiming that denial of his constitutional right to counsel required dismissal. In the Barreras case, the State appeals from an order dismissing second offense DWI charges based on denial of that defendant's constitutional right to counsel. Because these two appeals involve an identical issue, we have consolidated them.

These cases present the issue of whether a person placed under custodial arrest for DWI has a constitutional right to counsel immediately following a breath alcohol test. Defendants contend that failure to advise them that they had a right to consult with an attorney and to give them a meaningful opportunity to do so denied rights guaranteed them under the sixth amendment to the United States Constitution made applicable to the states through the fourteenth amendment, and article II, section 14 of the New Mexico Constitution.

## FACTS

After observing Sandoval drinking from a beer can while driving, the arresting officer stopped defendant. As he got out of his car, Sandoval staggered, his eyes were watery and bloodshot, his speech slurred, and he smelled of alcohol. No field test was administered, as the officer deemed it unnecessary. The officer arrested Sandoval, and transported him to a "Batmobile," where he was given a breath alcohol test (BAT) which showed defendant's blood contained .22% alcohol. At no time was Sandoval advised of his right to an independent chemical test in addition to the BAT, nor was he advised of any right to an attorney. The day following his arrest, a public defender was appointed to represent Sandoval.

An officer observed defendant Barreras crossing the center line several times before stopping him. The officer administered a field sobriety test. According to the officer, Barreras stumbled, his face was flushed, he was dazed, his eyes bloodshot, and his speech slurred. The officer took defendant to the Bernalillo County Detention Center where a BAT was administered which showed a reading of .13. Barreras was not advised of his right to an independent blood test or any right to an attorney. The police gave defendant an opportunity to make a phone call. Barreras first contacted an attorney at his arraignment.

## DISCUSSION

For a clearer understanding of the issue presented, it is helpful to briefly review pertinent sections of the Implied Consent Act, NMSA 1978, § 66–8–105 to –112 (Orig. Pamp. and Cum.Supp.1983), and cases construing several of those sections.

Any person who operates a motor vehicle within this State is deemed to have given consent to a chemical test for determining blood-alcohol content. Section 66–8–107(A). A breath test is administered at the direction of a law enforcement officer who has reasonable grounds to believe the per-

son driving or in control of the motor vehicle is under the influence. Section 66–8–107(B). Upon request of the person tested, the results of the test should be made available to him. Section 66–8–109(C). The results may be introduced into evidence in any civil or criminal action arising out of the acts alleged to have been committed by the person tested. Section 66–8–110(A).

If the person under arrest refuses to submit to the chemical test, the officers may not administer it; however, the accused risks loss of driving privileges for one year by refusing, provided he was warned that he could lose the privileges and the law enforcement officer had reasonable grounds for believing the arrested person was under the influence. Section 66–8–111. Refusal to take the test may be admitted into evidence to show the motorist's consciousness of guilt or fear of the test results. *McKay v. Davis,* 99 N.M. 29, 653 P.2d 860 (1982); *see also South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).

The Implied Consent Act also provides that the person tested shall be given an opportunity to arrange for an independent chemical test in addition to any test performed at the direction of the law enforcement officer, the cost of which shall be paid by the law enforcement agency involved. Section 66–8–109(B) and (E). In *State v. Myers,* 88 N.M. 16, 536 P.2d 280 (Ct.App. 1975), and *City of Farmington v. Joseph,* 91 N.M. 414, 575 P.2d 104 (Ct.App.1978), this Court held that police officers who administer the BAT have no obligation to inform the accused of his right to an additional test.

Defendants do not quarrel with the Implied Consent Act or the cases construing it but insist that, given the transitory nature of the evidence, the guarantee of a right to counsel must attach immediately following the administration of the BAT. Critical to the defendants' argument is the well-known fact that alcohol in the blood decomposes in a short period of time. Thus, if the test is not given quickly, possible excul-patory evidence will be lost to the accused. Defendants contend that they required assistance of counsel following their BATS so that they could be apprised of their right to an additional test under Section 66–8–109(B) and advised whether or not they should take it.

Neither defendant contends that he was deprived of his right to an additional test. Defendants seek to impose an obligation on the State in the form of a duty to advise of the right to counsel, in order to increase the likelihood that they will be apprised of their right to an independent test, despite the fact that we have already held that the police officer who administers the test is under no such obligation. *State v. Myers; City of Farmington v. Joseph.*

The sixth amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence." The United States Supreme Court has continued to emphasize the sixth amendment's historical purpose "to assure 'Assistance' at trial, when the accused * * * [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor" and has expanded the right to counsel "only when new contexts appear presenting the same dangers that gave birth initially to the right itself." *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). The high Court has recognized two guiding considerations for determining when the right to counsel attaches. First, the government must have initiated "adversary judicial criminal proceedings," *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), and second, the accused must find himself at a "critical stage" in those proceedings. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). *See generally United States v. Ash; Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

## I. Adversary Proceedings

In the plurality opinion of *Kirby v. Illinois,* Justice Stewart noted that all cases theretofore recognizing a sixth amendment right to counsel, other than those concerning the privilege against self-incrimination, involved points in time "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." 406 U.S. at 689, 92 S.Ct. at 1882. Defendants argue that issuance of citations to them either before or after the BAT and the actions of the arresting officers in filling out the narrative portion of the complaints against them amounted to an "initiation of judicial criminal proceedings" as contemplated by *Kirby.* We disagree.

■ Defendants point to NMSA 1978, Metro.R. 38(a) (Repl.Pamp.1981), which states that a "criminal action is commenced by * * * issuing a citation if permitted by law." The issuance of a citation, however, is not the type of "adversary judicial criminal proceeding" which implicates the right to counsel. NMSA 1978, § 31–1–6(A) allows a police officer who makes a warrantless arrest for a petty misdemeanor to offer the accused the option of accepting a citation to appear in lieu of taking him to jail. The legislature has not classified a second DWI offense as a petty misdemeanor, however. *See* Section 66–8–102(E); NMSA 1978, § 30–1–6. Thus, a citation could not be construed to take the place of more conventional charging procedures in the cases before us. In addition, NMSA 1978, § 66–8–122 (Cum.Supp.1983) requires that all individuals charged with DWI "be immediately taken before an available magistrate. * * * "

■ Even if criminal proceedings could be said to have "commenced" upon issuance of the citations, these statutory commencements themselves do not amount to the kind of government commitment to prosecute which triggers sixth amendment protection. A bright line must be drawn between the authority invested in the State's law enforcement officers and that invested in the State's prosecutors. The legislature has not given peace officers the power to charge individuals with crimes. *See generally* NMSA 1978, §§ 29–1–1 to –12 (Repl.Pamp.1979). Until the defendants find themselves "faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and criminal procedural law," they may not claim sixth amendment guarantees. *Kirby,* 406 U.S. at 689, 92 S.Ct. at 1882.

■ We are not unmindful of the issues defendants raise regarding the practical effect of failing a BAT, being issued a citation and having the narrative portion of a charging instrument filled out by the arresting police officer. While it may be true that this combination of occurrences leads to State prosecution in a high percentage of cases, it does not of itself amount to the kind of prosecutorial commitment which the United States Supreme Court has recognized as implicating the sixth amendment.

The Supreme Court addressed a practical concern similar to that raised by defendants in one of its first cases confronting the problem of custodial interrogation. In *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), the Court held, "It would exalt form over substance to make the right to counsel * * * depend on whether at the time of the interrogation, the authorities had secured a formal indictment." 378 U.S. at 486, 84 S.Ct. at 1762. Justice White challenged this holding in his dissent, stating, "From that very moment [when an individual becomes subject to custodial interrogation] apparently his right to counsel attaches, a rule wholly unworkable and impossible to administer unless police cars are equipped with public defenders and undercover agents and police informants have defense counsel at their side." 378 U.S. at 496, 84 S.Ct. at 1768.

In more recent cases the Supreme Court has construed *Escobedo* not as a vindication of the sixth amendment right to counsel, but instead, like *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694

(1966), as an affirmation of the fifth amendment privilege against self-incrimination. *See Kirby.* Defendants here raise no fifth amendment claim; the evidence extracted from them during detention was non-testimonial in character. *See generally Gilbert v. California; Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *McKay v. Davis.*

■ Thus, unless there has been a violation of the fifth amendment, a defendant must claim he was deprived of a right to counsel at a time after the initiation of criminal judicial proceedings in order to obtain relief. This defendants cannot do.

## II. Critical Stage

Defendants do not argue that they required assistance of counsel in order to adequately challenge the results of the BAT, but instead that they required assistance in order to preserve deteriorating evidence which might allow them to present an affirmative case. They point out that had counsel been present immediately following their BAT tests, they could have been informed of their right to obtain a second chemical test and been advised about whether or not to exercise the right.

Justice Blackman in *United States v. Ash* has described a critical stage as one at which a "subsequent trial would [not] cure a one-sided confrontation between prosecuting authorities and the uncounseled defendant." 413 U.S. at 315, 93 S.Ct. at 2576. We focus on the lack of a one-sided confrontation in the cases at bar. Defendants have pointed to no one-sided confrontation which would trigger a right to counsel occurring between them and the State following administration of the BAT. Moreover, they cannot show any possibility of overreaching or inappropriate conduct by the State which could interfere with their ability to obtain a fair trial.

■ In the cases before us, the State's officers could not with impunity attempt to inhibit the defendants' exercise of their statutory right to obtain an independent chemical test. Since the State has no obligation to inform defendants of the right to a second test, *see Joseph; Myers,* no "one-sided confrontation" could exist to require the presence of counsel under the sixth amendment.

Supreme Court cases which have required counsel have involved stages in criminal proceedings at which the government could abuse its power and potentially take advantage of the accused. *See e.g., Ash; Coleman; Wade; Powell.* No abuse could occur in the cases before us since no one-sided confrontation occurred.

■ Defendants contend that the fleeting nature of the evidence in a DWI case makes the period immediately following administration of the BAT a critical stage "because of the unique character of the evidence to be obtained and the trial strategy decision which must be made then, if at all," citing *State v. Fitzsimmons,* 93 Wash.2d 436, 610 P.2d 893, *judgment vacated and remanded,* 449 U.S. 977, 101 S.Ct. 390, 66 L.Ed.2d 240, *aff'd on state law grounds,* 94 Wash.2d 858, 620 P.2d 999 (1980). The *Fitzsimmons* case recognizes a right to counsel which attaches immediately following arrest for DWI on the basis of a Washington state court rule. We have no similar rule in New Mexico.

While we can appreciate the difficulties individuals arrested for DWI encounter in attempting to preserve an affirmative case for trial, we believe the New Mexico Constitution should be construed in light of the United States Constitution on the right to counsel issue. In following United States Supreme Court cases defining the sixth amendment right, we must hold that DWI defendants at the post-BAT stage do not meet the requirements necessary for a right to counsel to attach. *Kirby v. Illinois.*

## CONCLUSION

Defendant Sandoval's conviction is affirmed and the order reversing defendant Barreras' case is reversed and remanded for further action in accordance with this opinion.

IT IS SO ORDERED.

ALARID and MINZNER, JJ., concur.