893 P.2d 494

**Kenneth MAREZ, Petitioner–Appellant,**

v.

**STATE of New Mexico, TAXATION AND REVENUE DEPARTMENT, MOTOR VEHICLE DIVISION, Respondent–Appellee.**

**No. 15733.**

Court of Appeals of New Mexico.

March 17, 1995.

Mary Y.C. Han, Carolyn M. Nichols, Albuquerque, for petitioner-appellant.

Tom Udall, Atty. Gen., Judith Mellow, Sp. Asst. Atty. Gen., Santa Fe, for respondent-appellee.

*OPINION*

BUSTAMANTE, Judge.

The Motor Vehicle Division (MVD) revoked Appellant Kenneth Marez' (Marez) driver's license pursuant to the New Mexico Implied Consent Act. NMSA 1978, §§ 66–8–105 through 66–8–112 (Repl.Pamp.1994). The revocation was based on Marez' refusal to take a breath-alcohol test. Marez appealed to the district court of Bernalillo County. The district court affirmed the revocation. Marez now appeals the district court's affirmance. We are asked to address whether the Implied Consent Act and the criminal driving-while-intoxicated (DWI) charging

statute, NMSA 1978, Section 66–8–102 (Repl. Pamp.1994), are unconstitutional, in that they violate Marez' Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to counsel. We hold that there was no violation of Marez' constitutional rights and that Marez has no standing to challenge the constitutionality of Section 66–8–102.

## FACTS

On January 24, 1994, Marez was arrested and transported to the Bernalillo County Detention Center (BCDC). Marez does not challenge the arrest as such. At the BCDC the required provisions of the Implied Consent Act were read to him, advising him, among other things, that if he refused to submit to a chemical test of his breath, he could have his driver's license revoked for a period of one year. Sections 66–8–111(B), 66–8–112(E)(4)(b). Marez was then asked to submit to a breath test in order to determine his blood-alcohol level. Marez was not advised that he had the right to an attorney at that time; nor was he advised that he had the right to remain silent prior to submitting, or refusing to submit, to the breath test. Marez verbally indicated his refusal to submit to chemical testing of his breath.

At both the MVD revocation hearing and the district court hearing on the appeal, Marez argued that Section 66–8–102(D)(3), which added refusal to submit to chemical testing under the Implied Consent Act as an alternative basis for charging aggravated DWI, deprived him of his Fifth and Sixth Amendment rights because Marez was placed in the position of committing a crime if he refused the breath test. Marez argues this was improper because, at the same time, he was informed he could not consult with counsel before he made his decision whether to refuse the breath test, and the police officers did not provide Marez the standard *Miranda* warning before he was requested to decide if he would take the breath test. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Marez asserted below and asserts here that the statutes cannot be applied constitutionally in the context of a civil revocation proceeding if they are unconstitutional in the criminal context.

The district court affirmed the revocation of Marez' driver's license. The court held that Marez' oral refusal to take a breath test was not testimonial, and therefore his right to remain silent was not compromised. The court also found Marez was not entitled to consult with an attorney prior to manifesting his decision to refuse to submit to the breath test. The court found the Implied Consent Act and related statutory sections constitutionally valid, and held that Marez' refusal to take the breath test was properly admitted as evidence against him at the administrative revocation hearing.

## DISCUSSION

There is a well-established line of cases in both the New Mexico courts and the United States Supreme Court that approves the use of implied consent acts as a valid exercise of the police power of the state. *See In re McCain*, 84 N.M. 657, 660, 506 P.2d 1204, 1207 (1973); *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983); *State v. Sandoval*, 101 N.M. 399, 683 P.2d 516 (Ct.App.1984). The provisions of the New Mexico Implied Consent Act essentially declare that the driver of a motor vehicle in this state impliedly consents to administration of a breath-alcohol test when arrested for any driving offense allegedly committed while under the influence of intoxicating liquor. Section 66–8–107. Upon refusal to take a test, no test may be administered in the absence of a search warrant, but the driver's license can be revoked based solely on the refusal. Section 66–8–111; *State v. Richerson*, 87 N.M. 437, 440, 535 P.2d 644, 647 (Ct.App.), *cert. denied*, 87 N.M. 450, 535 P.2d 657 (1975).

Under the New Mexico Implied Consent Act, evidence of a refusal to take a breath test is specifically admissible in a civil proceeding to revoke a person's driver's license. *See* Section 66–8–112(E)(4)(a). Additionally, in a criminal prosecution, our courts have held that evidence of a refusal is properly admitted to show consciousness of guilt or fear of test results. *McKay v. Davis*, 99 N.M. 29, 32, 653 P.2d 860, 863 (1982).

Marez contends that the entire body of civil implied consent case law, like the

walls of Jericho, has now come tumbling down. Marez reaches his conclusion by asserting that the entire New Mexico DWI statutory scheme is unconstitutional as a result of the amendments to the criminal DWI statute that took effect in 1994. Marez focuses on Section 66–8–102(D). The amendment to the criminal DWI statute creates a new offense entitled "Aggravated DWI." One potential element of aggravated DWI is the refusal to submit to chemical testing under the Implied Consent Act. Section 66–8–102(D)(3) states:

> D. Aggravated driving while under the influence of intoxicating liquor or drugs consists of a person who:
>
> . . . .
>
> (3) refused to submit to chemical testing, as provided for in the Implied Consent Act [66–8–105 to 66–8–112 NMSA 1978], and in the judgment of the court, based upon evidence of intoxication presented to the court, the person was under the influence of intoxicating liquor or drugs.

Marez asserts that since Section 66–8–102(D)(3) makes refusal of a breath-alcohol test a potential element of aggravated DWI, it is unconstitutional on its face. Marez takes this argument a step further and asserts that if Section 66–8–102(D)(3) is unconstitutional in a criminal setting, the Implied Consent Act is also unconstitutional, on its face and as applied, in *both* criminal and civil contexts because it may potentially be used to violate constitutional rights in the criminal prosecution.

We reject this "guilt by association" argument and hold that the Implied Consent Act is not rendered unconstitutional in the civil context just because a refusal to take a breath test under the Implied Consent Act may be used as an element of the criminal offense of aggravated DWI. The constitutional right to counsel is solely a right to counsel in "criminal prosecutions." U.S. Const. amend. VI. *See State v. Bristor,* 236 Kan. 313, 691 P.2d 1, 2 (1984) (the United States Constitution Sixth Amendment right to representation by counsel applies only to the criminal defendant). Similarly, the privilege against self-incrimination protects a person from the use of certain evidence only if the evidence is to be offered in a "criminal case." U.S. Const. amend. V. *See Village of Menomonee Falls v. Kunz,* 126 Wis.2d 143, 376 N.W.2d 359, 361–62 (Ct.App.1985).

Further, the civil revocation hearing contemplated by the Implied Consent Act and the criminal DWI prosecution are independent of each other and, as a result, one does not necessarily affect the outcome of the other. For example, a refusal to take the breath-alcohol test can support revocation of a driver's license despite acquittal or dismissal of the criminal DWI charge. *See McCain,* 84 N.M. at 662, 506 P.2d at 1209; *Price v. Reed,* 725 P.2d 1254, 1260 (Okla.1986). *See also State v. Bishop,* 113 N.M. 732, 832 P.2d 793 (Ct.App.) (decision in civil revocation proceeding that the breath test given to defendant was not administered pursuant to the provisions of the Implied Consent Act is not binding on the subsequent criminal proceeding), *cert. denied,* 113 N.M. 690, 831 P.2d 989 (1992).

■ We need not consider the constitutionality of Section 66–8–102(D). If this appeal involved a criminal prosecution of Marez under that provision, a constitutional challenge would be appropriate. But this appeal concerns only the license-revocation proceeding. The record does not reveal whether any criminal prosecution was undertaken against Marez or whether any criminal penalties were assessed against him. Marez thus lacks standing to argue the unconstitutionality of the criminal statute. *See De Vargas Sav. & Loan Ass'n v. Campbell,* 87 N.M. 469, 473, 535 P.2d 1320, 1324 (1975) ("[T]o attain standing in a suit arguing the unlawfulness of governmental action, the complainant must allege that he is injured in fact or is imminently threatened with injury, economically or otherwise.").

Marez attempts to avoid the standing question with his argument of global unconstitutionality. Constitutional review is not so blunt an instrument as envisioned by Marez. There are numerous examples of statutory provisions which have been selectively reviewed and deemed unconstitutional without affecting the viability of companion, non-offensive provisions. *See, e.g., Giant Indus.*

*Arizona v. Taxation & Revenue Dep't*, 110 N.M. 442, 444, 796 P.2d 1138, 1140 (Ct.App. 1990) ("It is a fundamental principle that a part of a statute may be invalid and the remainder valid, where the invalid part can be separated from other portions, without impairing the force and effect of the remaining portions."); *Bradbury & Stamm Constr. Co. v. Bureau of Revenue*, 70 N.M. 226, 230–31, 372 P.2d 808, 812–13 (1962). It is now a commonplace technique of legislative drafting to provide for survival of non-affected provisions if portions of a statute or regulation are found to be invalid. The statute that enacted Section 66–8–102(D) includes just such a severability provision. 1993 N.M. Laws, ch. 66, § 7. There is simply no reason why the purported unconstitutionality of the criminalization of the refusal to submit to chemical testing should affect the Implied Consent Act in other contexts.

**CONCLUSION**

We affirm the district court's decision.

IT IS SO ORDERED.

HARTZ and PICKARD, JJ., concur.