1997-NMCA-036

939 P.2d 1091

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Mark Erroll KANIKAYNAR,**
**Defendant–Appellant.**

**No. 16327.**

Court of Appeals of New Mexico.

March 26, 1997.

Certiorari Granted May 2, 1997.

Tom Udall, Attorney General, M. Anne Wood, Ass't Attorney General, Sante Fe, for Plaintiff–Appellee.

T. Glenn Ellington, Chief Public Defender, Santa Fe, D. Eric Hannum, Ass't Public Defender, Albuquerque, for Defendant–Appellant.

## OPINION

ALARID, Judge.

1. Defendant pled guilty to aggravated driving while intoxicated (DWI) contrary to NMSA 1978, Section 66–8–102 (Repl. Pamp.1994). The basis for the aggravation was Defendant's refusal to submit to a chemical test that would determine the alcohol concentration of his breath. *See* § 66–8–102(D)(3). Pursuant to Section 66–8–102(F)(2), his sentence included an additional sixty days minimum mandatory confinement. He appeals the imposition of the additional sixty days of confinement, contending the provision is unconstitutional because it infringes upon his Sixth Amendment right to counsel, violates his right to due process, is void for vagueness, and criminalizes the exercise of his right to be free from warrantless

searches and seizures. Because we do not agree that the statutory scheme violated Defendant's rights, is void for vagueness, or that the statute criminalizes the exercise of his Fourth Amendment rights, we affirm his convictions.

## I. BACKGROUND

2. When Defendant entered his guilty plea to the charge of DWI, his counsel told the court that Defendant admitted that he had refused to submit to chemical testing, an element of aggravated DWI, but stated that Defendant did not concede that the increased mandatory minimum sentence for aggravated DWI was proper in this case. The district court sentenced Defendant to 364 days in jail, suspending all but the mandatory minimum of thirty days required for a third DWI offense plus the mandatory sixty days required under Section 66–8–102(F)(2) for the aggravation of a third offense. The district court specifically stated that its intent was for Defendant to serve no more than the mandatory period of incarceration required by law, and ordered the execution of the sixty-day enhancement for the aggravation be stayed pending appeal.

## II. DISCUSSION

### A. Aggravated DWI Provisions Do Not Violate Due Process

■ 3. Under Section 66–8–102(D)(3), a person found guilty of DWI, and who refuses to submit to a chemical test to determine the concentration of alcohol in his blood or breath, is guilty of aggravated DWI. Our Implied Consent Act, NMSA 1978, §§ 66–8–105 to –112 (Repl.Pamp.1994), requires that a suspect be advised that refusal will result in a driver's license revocation. Section 66–8–111(B). However, there is no requirement that the suspect be informed of the criminal consequences created by Section 66–8–102. Defendant contends that the aggravation of his DWI conviction for his refusal to submit to a chemical test when he was not advised of the criminal consequences of that refusal violates the due process provisions of both the United States and the New Mexico Constitutions. We do not agree.

4. An analogous issue to the argument advanced by Defendant here was argued in *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). The Court held that there was no denial of due process where the defendant was warned that his refusal to submit to a breath alcohol test (BAT) could result in the imposition of administrative penalties, but was not warned that his refusal could be used in evidence in his prosecution. The *Neville* Court distinguished *Doyle v. Ohio*, 426 U.S. 610, 616–20, 96 S.Ct. 2240, 2243–46, 49 L.Ed.2d 91 (1976), which held that the warning prescribed by *Miranda v. Arizona*, 384 U.S. 436, 468, 86 S.Ct. 1602, 1624–25, 16 L.Ed.2d 694 (1966), carried with it the implicit promise that post-arrest silence could not be used to impeach his testimony at trial. The Court recognized that while the right to silence is implicit in the *Miranda* warnings, the "right to refuse the blood-alcohol test, by contrast, is simply a matter of grace bestowed by the South Dakota legislature." *Neville*, 459 U.S. at 565, 103 S.Ct. at 923. The Court reasoned that warning the defendant of the administrative penalties served as notice that refusal would result in adverse consequences and thus it was not necessary to give further warnings. *Id.* at 566, 103 S.Ct. at 924.

5. Defendant seeks to distinguish *Neville* by arguing that the consequences of refusal in his case have much greater significance than the issues considered in *Neville*. We disagree. The right of an accused to refuse the breath alcohol test has no constitutional implications. Thus, the statutory penalty arising from a refusal to take the test does not offend notions of fairness and due process. The *Neville* case is controlling authority in this case. The statutory scheme in New Mexico warns drivers of the administrative penalties. This warning is sufficient to notify drivers that refusal carries separate penalties.

6. In a New Mexico case in which the defendant refused to take a second test after blowing once into a breathalyzer, the defendant argued that there was no evidence that a second BAT, if given, would have been helpful on the "relation-back" issue. *State v. Scussel*, 117 N.M. 241, 244, 871 P.2d 5, 8

(Ct.App.), *cert. denied,* 117 N.M. 215, 870 P.2d 753 (1994). This Court concluded:

> Defendant argues that he should have been informed of all the consequences of his refusal to take a second test, and without such a warning, our holding is unfair. We disagree. We know of no requirement that a party must be informed of every possible consequence of an action before suffering the consequences of that action.

*Id.* at 245, 871 P.2d at 9.

7. New Mexico's implied consent statute does not contain language requiring that a driver must be warned of all the consequences of his refusal to submit to testing.

### B. Claim Of Denial Of Right To Counsel

■ 8. A person who refuses to submit to chemical testing and then is judged to have been driving while intoxicated is subject to a mandatory jail sentence. *See* § 66–8–102(D)(3), (E), & (F). As a result of these potential sanctions, Defendant asserts there is a right to counsel under the New Mexico Constitution when a driver is asked to submit to chemical testing. We disagree. In this case there is no evidence that Defendant requested or was denied an attorney before he refused a breath test. Defendant therefore is arguing that the new DWI statute as written is unconstitutional because it violates the right to counsel on its face.

9. In *State v. Sandoval,* 101 N.M. 399, 683 P.2d 516 (Ct.App.1984), we considered the question of whether the right to counsel attaches immediately following the administration of a breath alcohol test so that a driver could be apprised of his right to an additional chemical test and advised whether or not he should take it. We stated that the issuance of a DWI citation does not amount to the "initiation of criminal proceedings" and "one-sided confrontation" in which presence of counsel is required under the Sixth Amendment to the United States Constitution. *Id.* at 402–03, 683 P.2d at 519–20.

10. Defendant contends that *Sandoval* is not controlling in the present case because Section 66–8–102, as subsequently amended, has created a type of "critical stage" that was missing in that case. Defendant has not explained how, where he is contending counsel is required at a point before it was sought in *Sandoval,* the new statute bears on the "adversary proceedings" prong of the test. In addition, we are not persuaded that Defendant was left without any opportunity to preserve an affirmative case for trial. *See, e.g., In re Suazo,* 117 N.M. 785, 793, 877 P.2d 1088, 1096 (1994) (motorist offered a fair chance to understand his rights and recant refusal to take chemical test); Section 66–8–109(B) (driver has opportunity to arrange for an additional chemical test); Section 66–8–102(D)(3) (aggravated DWI requires judgment, based on evidence of intoxication, that the defendant was driving while intoxicated).

11. The authorities cited by Defendant do not convince us that the New Mexico Constitution affords him a more extensive right to counsel than the United States Constitution. *See Sandoval,* 101 N.M. at 403, 683 P.2d at 520 ("[T]he New Mexico Constitution should be construed in light of the United States Constitution on the right to counsel issue.").

■ 12. In *Nyflot v. Minnesota Commissioner of Public Safety,* 474 U.S. 1027, 1029, 106 S.Ct. 586, 587–88, 88 L.Ed.2d 567 (1985) (mem.) (White J. & Stevens, J., dissenting), the United States Supreme Court dismissed Nyflot's appeal from a decision of the Minnesota Supreme Court which held that there was no statutory or constitutional right to consult with counsel before deciding whether to submit to a chemical blood test. The appeal was dismissed for want of a substantial federal question. *Id.* at 1027, 106 S.Ct. at 586. Summary dismissals on these grounds leave the judgment undisturbed and preclude lower courts from coming to a different conclusion on the issue presented based on the application of principles established by prior decisions. *Mandel v. Bradley,* 432 U.S. 173, 176, 97 S.Ct. 2238, 2240–41, 53 L.Ed.2d 199 (1977); *see also McVeigh v. Smith,* 872 F.2d 725, 728 (6th Cir.1989) (*Nyflot* is controlling on holding that the petitioner was not denied her Sixth Amendment right to counsel); *Langelier v. Coleman,* 861 F.2d 1508, 1511 (11th Cir.1988) (summary dismissal operates as adjudication of that

case on the merits and has precedential effect on other cases).

13. Limits on the right to counsel, such as to custodial interrogation situations as required by *Miranda* and the actual commencement of judicial proceedings by indictment or complaint, find support in United States Supreme Court decisions going back twenty-five years. *See Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 1881–82, 32 L.Ed.2d 411 (1972); *see also United States v. Gouveia,* 467 U.S. 180, 188, 104 S.Ct. 2292, 2297–98, 81 L.Ed.2d 146 (1984). Further expansion of the right to counsel prior to the commencement of adversary criminal proceedings seems contrary to the view of the Supreme Court. *Gouveia,* 467 U.S. at 188 n. 5, 104 S.Ct. at 2297 n. 5 Indications from the federal circuits are that expansion of the Sixth Amendment right to counsel is unlikely. *See Langelier,* 861 F.2d at 1510; *McVeigh,* 872 F.2d at 728.

14. Jurisdictions with aggravated DWI and implied consent laws like ours consistently hold the Sixth Amendment right to counsel does not attach until charges are formally filed. When faced with a similar issue, the Minnesota Supreme Court held:

Without question, the right to counsel guaranteed by the sixth amendment to the United States Constitution does not attach until formal charges are initiated. Thus, appellants had no federal right to counsel at the time they were asked to submit to testing; although each was under arrest and in police custody, none had yet been formally charged. *McDonnell v. Commissioner of Pub. Safety,* 473 N.W.2d 848, 853 (Minn.1991) (citations omitted).

In a recent Idaho case, the defendant claimed her Sixth and Fourteenth Amendment rights to counsel were violated when, after she had submitted to a chemical test, her request to call her attorney was denied. *State v. Carr,* 128 Idaho 181, 911 P.2d 774 (Ct.App.1995). In dicta, the Idaho Court of Appeals commented there clearly is no right to counsel prior to the administration of a chemical test. *Id.* 911 P.2d at 776.

15. The practical effect of the rule of law suggested by Defendant would be to severely compromise the State's legitimate interest in preserving blood alcohol evidence. *State v. Suazo,* 117 N.M. 794, 797, 877 P.2d 1097, 1100 (Ct.App.1993). It is clear that the delays inherent in granting the relief urged by Defendant would eliminate blood alcohol tests as a viable element of evidence in DWI prosecutions. We have no indication that the legislature intended to enact, under the guise of strengthening our statutory scheme in the DWI area, a requirement that would nullify one of the most potent weapons in the State's DWI arsenal. *See generally Langelier,* 861 F.2d at 1512 n. 6.

16. We have held previously that, when considering the issue of right to counsel under the New Mexico Constitution, we are to look to the United States Supreme Court's rulings in the area. *Sandoval,* 101 N.M. at 403, 683 P.2d at 520. Defendant would have us follow what is called the "Minnesota model" in which the Minnesota legislature provides in its implied consent act a limited right to counsel. In his own petition, Defendant points out that it was the legislature which created a limited right to counsel, not the courts, and we believe any expansion of the right to counsel in the implied consent area must come through the legislature unless and until the United States Supreme Court abandons or modifies *Nyflot.*

## C. The Statute Is Not Void For Vagueness

■ 17. Defendant asserts that Section 66–8–102(D)(3) is void for vagueness under the due process clause because reasonable notice of what is prohibited is not given by the statute. However, Defendant does not direct our attention to any portion of the statute that fails to give notice of the prohibited conduct or specify any language which is otherwise vague. Rather, Defendant argues that Section 66–8–102(D)(3) is unconstitutionally vague because it is irreconcilable with Section 66–8–111(A). However, Defendant does not cite any specific authority for his position that the inability to reconcile the two statutes results in a finding of unconstitutional vagueness for one of the statutes. While we initially disagree that the statutes are irreconcilable, absent cited authority, we will

not review the issue. *In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984).

18. We find that Defendant's argument is unpersuasive and affirm the district court on this issue.

### D. The Constitutional Right To Be Free Of Warrantless Searches

■ 19. Despite Defendant's assertion to the contrary, there is no constitutional right to refuse a chemical test, and his right to refuse a forced chemical test exists only if the forced test is unreasonable under the Fourth Amendment. *See McKay v. Davis,* 99 N.M. 29, 30, 653 P.2d 860, 861 (1982). In the chemical test area, the Supreme Court has developed a test which balances an individual's Fourth Amendment interest and the promotion of a legitimate governmental interest. *See Schmerber v. California,* 384 U.S. 757, 771–72, 86 S.Ct. 1826, 1836–37, 16 L.Ed.2d 908 (1966); *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 619, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639 (1989).

■ 20. An Alaska case heard by the Ninth Circuit upheld the charging of a defendant with DWI and the separate misdemeanor of refusing to take a BAT over claimed Fourth and Fourteenth Amendment violations. In holding that an arrested driver has no constitutional right to refuse to submit to a breath test, the Court pointed out that such a right is not created merely because the driver has a choice not to cooperate. The Court quoted the following:

> "[Defendant's] argument confuses a legal concept, 'consent', with a factual concept, 'cooperation' or 'assent.' The two are substantially different. Consent in the constitutional sense is only required where the defendant has a legal right to refuse. As we have seen, a legally arrested defendant has no constitutional right to refuse a breathalyzer examination. True, he may fail to cooperate or give his assent to a breath test as a matter of fact, but failure to cooperate does not create a legal right where it would otherwise not exist."

*Burnett v. Municipality of Anchorage,* 634 F.Supp. 1029, 1038 n. 7 (D.Alaska 1986)

(quoting *McCracken v. State,* 685 P.2d 1275, 1280 (Alaska.Ct.App.1984) (Singleton, J., concurring)). Defendant's refusal to submit to a chemical test was simply a decision not to cooperate unclothed by constitutional protection.

### III. CONCLUSION

21. For the reasons stated above, the decision of the district court is affirmed.

22. **IT IS SO ORDERED.**

DONNELLY, J., concurs.

APODACA, J., dissenting.

APODACA, Judge, concurring in part and dissenting in part.

23. I concur in the dispositions under Subsections II B, C and D of the majority opinion. I respectfully disagree, however, with the majority's holding under Subsection II A that NMSA 1978, Section 66–8–102 (Repl.Pamp.1994) does not violate Defendant's right to due process. I would conclude instead that the failure to advise Defendant of the possible criminal consequences of his refusal to take a breath test violated Defendant's right to due process.

### I. DISCUSSION

24. The majority relies primarily on *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) as the basis for affirmance on this issue. I, however, believe *Neville* is distinguishable and would rely instead on *Roberts v. Maine,* 48 F.3d 1287 (1st Cir.1995).

### A. Test Used To Determine Violation Of Due Process

25. To determine or analyze whether Section 66–8–102 of New Mexico's Implied Consent Act violates a DWI suspect's right to due process, we must consider three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including

the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

### 1. The First *Mathews* Prong Or Factor

26. Defendant's unwarned refusal constitutes an element of the crime of which he was convicted (Aggravated DWI) and for which he must serve a mandatory sixty days in jail. *See Marez v. State, Taxation & Revenue Dep't, Motor Vehicle Div.,* 119 N.M. 598, 600, 893 P.2d 494, 496 (Ct.App.1995) (characterizing refusal to submit to chemical test as element of the offense of Aggravated DWI). I believe that the mandatory jail time Defendant incurred represented a significant liberty interest that was affected by the State's failure to advise him of the criminal consequences of refusing to submit to a chemical test. *See Roberts,* 48 F.3d at 1292 (mandatory sentence for refusal was significant liberty interest affected by state's refusal to permit defendant to call attorney).

### 2. The Second *Mathews* Prong Or Factor

27. We next assess the risk of erroneous deprivation of Defendant's liberty interest under the existing procedures and what value any additional safeguards would provide. In the implied consent to chemical testing context, "[t]he risk that an erroneous deprivation of liberty will occur is roughly commensurate with the relevance the unwarned consequence bears to the decision to refuse testing." *Roberts,* 48 F.3d at 1303–04 (Cyr, J., concurring). The mandatory incarceration for Aggravated DWI is highly relevant to the decision whether to submit to a chemical test. Relying on this Court's opinion in *State v. Scussel,* 117 N.M. 241, 871 P.2d 5 (Ct.App.1994), the majority minimizes the risk, holding that there is no obligation to warn Defendant of the criminal implications of his refusal. I am unpersuaded.

28. In *Scussel,* I concede that this Court stated it knew "of no requirement that a party must be informed of every possible consequence of an action[.]" *Id.* at 245, 871

P.2d at 9. The consequence complained of in *Scussel,* however, was the waiver of an evidentiary argument that the defendant's refusal to submit to a chemical test had helped to create. That is far different from the incarceration consequence in this appeal. Our Supreme Court has noted the constitutional requirements for an implied consent law in a case where the only interest at stake was a driver's license revocation. *In re McCain,* 84 N.M. 657, 506 P.2d 1204 (1973). One necessary safeguard was that "the person be informed of the consequences of refusal to submit to a test." *Id.* at 661, 506 P.2d at 1208. Although I agree that a suspect need not be informed of every possible consequence of refusing to submit to a chemical test, I would hold that the important liberty interest at stake in this appeal and the relevance the unwarned consequence bears to the testing decision should require a warning to Defendant of the mandatory sentence.

29. As I noted previously, the majority concludes that *Neville* is controlling. In *Neville,* a driver's refusal to submit to a chemical test was admitted into evidence at his DWI trial. He had been warned of the administrative consequences for refusing to submit to a chemical test, but not that his refusal could be used against him at trial to prove the substantive charge against him. The Supreme Court held in *Neville* that the administrative warning did not implicitly assure the driver that there would be no other consequences to his refusal and that the warning alerted the driver that refusal was not a "safe harbor." *Neville,* 459 U.S. at 566, 103 S.Ct. at 924.

30. In *Roberts,* on which I would rely to reverse, the First Circuit declined to extend *Neville* to cover the unwarned incarceration of uncounseled drivers who refused to submit to a chemical test. *Roberts,* 48 F.3d at 1295. Much of the reasoning in *Roberts* applies to this appeal. Defendant's liberty interest in freedom from incarceration is of greater magnitude than the *Neville* driver's interest in an evidentiary issue. *See Roberts,* 48 F.3d at 1295. Additionally, the consequence about which the State failed to warn Defendant is "irrevocable and irrebuttable," but the evi-

dentiary disadvantage complained of in *Neville* could be "rebutted, mitigated or otherwise explained ... at trial." *See Roberts*, 48 F.3d at 1295. An adequate warning of the mandatory, minimum incarceration that would follow Defendant's refusal was crucial to protecting his liberty interest. *Cf. id.* at 1294 (finding that permitting defendant to call attorney was crucial to procedural safeguard). I believe that we should decline to extend *Neville* in New Mexico to cover the unwarned mandatory incarceration imposed on drivers who refuse to submit to a chemical test.

31. The probable value of the proposed additional procedural safeguard must be evaluated before the second prong of the *Mathews* analysis is satisfied. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903. The implied consent advisory or warning serves two purposes: to give the suspect "a fair chance to understand his or her rights," *In re Suazo*, 117 N.M. 785, 793, 877 P.2d 1088, 1096 (1994); *see also State v. Trevino*, 127 Wash.2d 735, 903 P.2d 447, 453 (1995) (purpose of advisory is to give motorist an opportunity to make a knowing and intelligent decision whether to submit to a test), and to encourage drivers to submit to chemical testing. The purposes of a warning are defeated by the implied consent advisory employed in New Mexico. By failing to advise suspects that a substantial loss of liberty is at stake, the State fails to offer suspects an opportunity to understand their rights and to make an intelligent decision and, most important, to encourage submission in order to avoid mandatory incarceration. *See Roberts*, 48 F.3d at 1304 (Cyr, J., concurring). Therefore, the probable value of warning drivers of the mandatory sentencing enhancement so that they may have a fair chance to understand the consequences of their decision is great.

### 3. The Third *Mathews* Prong or Factor

32. The third prong of the *Mathews* analysis requires us to consider the government's interest and the administrative burden the additional procedural requirement would entail. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903. The State has a strong interest in obtaining evidence through the administration of chemical tests. *Suazo*, 117 N.M. at 790, 877 P.2d at 1093. Cooperation of DWI suspects would be more rather than less likely if they were informed of the most serious consequences of refusing the chemical tests. *See Roberts*, 48 F.3d at 1304 (Cyr, J., concurring).

33. The State claims it would be unduly burdened by the requirement of an additional warning, asserting that officers would need to discover the prior DWI history of each suspect to accurately warn of the minimum confinement a refusal would mandate. I disagree. A simple warning to suspects would suffice to inform them that their refusal could result in some loss of liberty. *See id.* I suggest the following as an example—"In the event that you are convicted of DWI, your refusal to submit to a chemical test may result in minimum mandatory incarceration of sixty days."

## II. CONCLUSION

34. I would hold that, under the *Mathews* three-prong analysis, the failure to advise or warn Defendant of the possible criminal consequences of his refusal to take the breath test violated Defendant's right to due process. Consequently, I would reverse the aggravated portion of Defendant's conviction for DWI and remand to the District Court with instructions to resentence him to the mandatory minimum of thirty days, after deducting the sixty days mandatory sentence imposed as a result of the aggravation. The majority having decided otherwise, I dissent.