**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 17 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

MARK ERROLL KANIKAYNAR,

    Plaintiff-Appellant,

v.

MICHAEL SISNEROS, Director
Bernalillo County Detention Center;
ATTORNEY GENERAL STATE OF
NEW MEXICO,

    Defendants-Appellees.

No. 98-2200

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-98-17-BB/LCS)

---

D. Eric Hannum, Albuquerque, New Mexico, for Plaintiff-Appellant.

M. Anne Kelly, Assistant Attorney General for the State of New Mexico, (Tom
Udall, Attorney General for the State of New Mexico, on the brief), Santa Fe,
New Mexico, for Defendants-Appellees.

---

Before **PORFILIO**, **BRORBY**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

Mark Erroll Kanikaynar was arrested for driving while intoxicated ("DWI"). While in custody, the arresting officer read to him the warning required by the New Mexico Implied Consent Act, informing him that if he refused to consent to the chemical testing, his driver's license could be revoked. *See* N.M. Stat. Ann. § 66-8-111(B). He pleaded guilty to DWI, in violation of N.M. Stat. Ann. § 66-8-102(D), which carries with it an enhanced sentence for, *inter alia*, refusal to consent to the chemical testing. *See id*. § 66-8-102(D)(3). Because Kanikaynar had refused to consent to the chemical test, his sentence was automatically increased by a minimum of sixty-days confinement. *See id*. § 66-8-102(F)(2). In addition to the sixty-day enhancement for the aggravated DWI, which was stayed pending appeal, Kanikaynar was sentenced to 30 days in jail, the minimum period required by law. The New Mexico Court of Appeals resolved Kanikaynar's constitutional challenges to the enhancement for aggravated DWI. *See State v. Kanikaynar*, 939 P.2d 1091 (N.M. Ct. App. 1997).

Kanikaynar subsequently filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the District of New Mexico. The district court held that the state court decision was not contrary to or an unreasonable application of clearly established federal law, and dismissed the petition. Because the district court granted a certificate of appealability, this court exercises jurisdiction pursuant to 28 U.S.C. § 2253(a) and **affirms**.

This appeal is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d)(1). Prior to the AEDPA, federal courts conducting habeas appeals were not required to "pay any special heed to the underlying state court decision." *O'Brien v. Dubois*, 145 F.3d 16, 20 (1st Cir. 1998). The AEDPA, however, requires federal courts to defer to state court decisions. Accordingly, a state prisoner is entitled to federal habeas corpus relief only if he can establish that a claim adjudicated by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The text of § 2254(d) "offers little guidance to the courts charged with applying it." *Matteo v. Superintendent*, 171 F.3d 877, 887 (3d Cir. 1999) (en banc). Moreover, there is no consensus among the circuits on the degree of deference to be accorded a state court's federal constitutional ruling.[1] *See Matteo*, 171 F.3d at 885. While there are multiple approaches affecting the degree of

---

[1]The Supreme Court has granted certiorari in a case involving an interpretation of § 2254 and may resolve the issue. *See Williams v. Taylor*, 163 F.3d 860 (4th Cir. 1998), cert. granted, 119 S.Ct. 1355 (Apr. 5, 1999) (No. 98-8384).

deference to be accorded a state court's constitutional ruling,[2] this court concludes

that under *any* interpretation of § 2254(d), Kanikaynar's appeal fails.

## I. DUE PROCESS

Kanikaynar argues that because he was warned only that refusal to submit to

a chemical test could result in revocation of driving privileges, his due process

rights were violated by the subsequent mandatory criminal sanctions for such

refusal. In asserting that the partial warning was "fundamentally unfair,"

Kanikaynar applies the due process balancing test outlined in *Mathews v. Eldridge*,

424 U.S. 319 (1976). The New Mexico Court of Appeals held, however, that

*South Dakota v. Neville*, 459 U.S. 553 (1983), was controlling authority in this

case. *See Kanikaynar*, 939 P.2d at 1093. The Supreme Court held in *Neville* there

was no due process violation when an officer warned an arrestee that refusal to

consent to a chemical test could result in the revocation of driving privileges, but

did not also warn that refusal could be used as evidence against the defendant at

trial. *Neville*, 459 U.S. at 559-64. Kanikaynar argues there is a significant due

process difference between the use of a defendant's refusal as evidence of guilt,

---

[2]*See Nevers v. Killinger*, 169 F.3d 352, 357-62 (6th Cir. 1999) (discussing various approaches of the circuits).

the consequence of refusal in *Neville*, and mandatory incarceration, the consequence of refusal in New Mexico.[3]

Relying upon *Neville*, the New Mexico Court of Appeals rejected this distinction by stating that the "right of an accused to refuse the breath alcohol test has no constitutional implications." *Kanikaynar*, 939 P.2d at 1093. *Neville*'s holding makes clear that the nature of the unwarned consequence was not a factor in its decision. First, the Court stated that a defendant's right to refuse a blood-alcohol test "is simply a matter of grace bestowed by [the state]." 459 U.S. at 565. Accordingly, a defendant cannot argue a right to be free of "the attendant penalties for making that choice."[4] *Id.* at 563. Second, the Court held that the limited

_____

[3]Kanikaynar relies upon a First Circuit case to support this argument. *See Roberts v. Maine*, 48 F.3d 1287 (1995). Assuming without deciding that *Roberts* is relevant under the AEDPA in light of § 2254(d), Kanikaynar's reliance upon *Roberts* is misplaced. In *Roberts*, the First Circuit concluded that the defendant's due process rights were violated because he was informed in writing that he had been "advised of the consequences of failure to comply" with a blood-alcohol test when he was not, and because he was denied the right to speak with his attorney, despite his request. *Id*. at 1295. *Roberts*, however, is consistent with *Neville*'s distinction between a warning about consequences which explicitly or implicitly assures the warned that they have been informed of all the consequences, and a warning about some consequences without any corresponding assurance. *See South Dakota v. Neville*, 459 U.S. 553, 565 (1983) (contrasting the *Miranda* warning, which implicitly assures the suspect that his silence will not be used against him, and the partial warning given by the officer in that case which "contained no such misleading implicit assurances as to the relative consequences of his choice").

[4]This holding by the Court that a state can either compel a driver to take the test or penalize refusal addresses Kanikaynar's argument that he was deprived of due process by the conflict between the New Mexico statute stating that when a

warnings of the consequences of refusing to take the blood-alcohol test could not be characterized as "assur[ing] a suspect that no consequences other than those mentioned will occur." *Id*. at 566. "Importantly, the warning that he could lose his driver's license made it clear that refusing the test was not a 'safe harbor,' free of adverse consequences." *Id*.

Because of the similarity between *Neville* and the case here, under any interpretation of the standard of review in § 2254(d), the state court's decision to follow *Neville* was not contrary to or an unreasonable application of clearly established law, as determined by the Supreme Court.

## II. RIGHT TO COUNSEL

Kanikaynar argues that the right to counsel attaches when a defendant is requested to submit to chemical testing and a refusal can result in the imposition of criminal penalties. The New Mexico Court of Appeals rejected Kanikaynar's argument on several grounds. *See Kanikaynar*, 939 P.2d at 1094-95. First, it relied upon the Supreme Court's summary dismissal for want of a federal question in *Nyflot v. Minnesota Commissioner of Public Safety*, 474 U.S. 1027 (1985). *See id*. Nyflot had appealed from a decision of the Minnesota Supreme Court which

driver declines to submit to a test, "none shall be administered," and the statute criminalizing such refusal.

-6-

held that there was no statutory or constitutional right to consult with counsel before deciding whether to submit to a chemical blood test. *See Nyflot*, 474 U.S. at 1028-29 (White, J., dissenting). Citing to *Mandel v. Bradley*, the New Mexico Court of Appeals stated that the Court's summary dismissal "preclude[s] lower courts from coming to a different conclusion on the issue presented." *Kanikaynar*, 939 P.2d at 1094; *see Mandel v. Bradley*, 432 U.S. 173, 176 (1977) ("Summary . . . dismissals for want of a substantial federal question . . . prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions."). Second, the New Mexico Court of Appeals noted that the Supreme Court has stringently limited the situations in which the right to counsel attaches and concluded that "[f]urther expansion of the right to counsel prior to the commencement of adversary criminal proceedings seems contrary to the view of the Supreme Court." *Kanikaynar*, 939 P.2d 1095. The court also noted that expansion of the right to counsel according to Kanikaynar's suggestion would "severely compromise the State's interest in preserving blood alcohol evidence." *Id.*

The New Mexico Court of Appeals' holding is consistent with Supreme Court precedent. The Court has reiterated on numerous occasions that the right to counsel attaches only when the government's role shifts from investigation to accusation and judicial proceedings are formally commenced against a suspect.

*See, e.g.*, *McNeil v. Wisconsin*, 501 U.S. 171, 175-76 (1991); *Moran v. Burbine*, 475 U.S. 412, 430-32 (1986); *United States v. Gouveia*, 467 U.S. 180, 187-88 (1984) (citing cases since 1938 holding same).  Indeed, this same argument was rejected by the First Circuit in *Roberts v. Maine*, relied upon by Kanikaynar *supra*. *Roberts*, decided prior to the AEDPA and thus applying a standard of review considerably less deferential than currently compelled under § 2254(d), noted that Supreme Court jurisprudence allows for few exceptions to the bright-line rule that the right to counsel does not attach until the government initiates official proceedings.  *See Roberts*, 48 F.3d 1287, 1290-91 (1995); *see also Gouveia*, 467 U.S. at 188-89 & n.5 (reaffirming bright-line rule); *United States v. Ash*, 413 U.S. 300, 316 (1973) (rejecting expansion of bright-line rule to witness photographic identification).  The First Circuit held that when a driver is confronted with the choice of consenting to a test or refusing but being subject to a mandatory sentence for doing so,  "[t]he government [has] not yet crossed the constitutional divide between investigator and accuser." *See Roberts*, 48 F.3d at 1290-91.

Were he before the Supreme Court, Kanikaynar might be able to persuade the Court to create an exception to its repeatedly announced bright-line rule. Copious Supreme Court precedent reiterating its bright-line rule, however, compels this court to conclude that the New Mexico Court of Appeals decision

was not contrary to or an unreasonable application of clearly established law, as determined by the Supreme Court.

### III. FOURTH AMENDMENT

Finally, Kanikaynar argues that an enhanced sentence for refusing to submit to alcohol testing violates the Fourth Amendment's protection from warrantless searches. The New Mexico Court of Appeals held that there is no constitutional right to refuse a chemical test. *See Kanikaynar*, 939 P.2d at 1096 (citing *Schmerber v. California*, 384 U.S. 757, 771-72 (1966) (holding that blood-alcohol test taken without consent of arrestee did not violate the Fourth Amendment when time had passed since car accident and further delay in securing warrant would have compromised value of blood-alcohol test evidence); *Skinner v. Railway Labor Execs. Ass'n*, 489 U.S. 602, 616-17 (1989) (no Fourth Amendment violation to test railroad employees who violated safety regulations or were involved in accidents)).

It is true that the Supreme Court has not addressed the constitutionality of burdening a state-conferred choice to refuse to take a test with a mandatory criminal sentence. In addition to *Schmerber* and *Skinner*, however, the Court has on several occasions upheld mandatory chemical testing, particularly of those who pose a high risk to others. *See, e.g.*, *National Treasury Employees Union v. Von*

*Raab*, 489 U.S. 656, 679 (1992) (holding mandatory chemical testing of customs agents who carry firearms or are involved in drug interdiction constitutional); *see also Veronia Sch. Dist. v. Acton*, 515 U.S. 646, 665 (1995) (same regarding chemical testing of scholastic athletes).  The Court has also held that the extraordinary danger posed to the public by intoxicated drivers justified relaxing strict Fourth Amendment requirements.  In *Michigan Department of State Police v. Sitz*, the Court held that although the highway sobriety checkpoint program constituted a seizure under the Fourth Amendment, it was justified by the state's interest in addressing the problem of drunk driving.  *See* 496 U.S. 444, 455 (1990).  In discussing the seriousness of drunken driving, the Court stated, "[n]o one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it."  *Id.* at 451; *see also Neville*, 459 U.S. at 558 ("The carnage caused by drunk drivers is well documented . . . .").

Because the Court has found that there is no constitutional problem with requiring a blood-alcohol test despite refusal when waiting for a warrant would compromise the evidence, that compulsory testing is constitutional when the public danger outweighs private rights, and has frequently noted states' interest in reducing the carnage wrought by those who drive while intoxicated, this court cannot say that the New Mexico court's decision was contrary to or an

unreasonable application of clearly established law, as determined by the Supreme Court.

## IV. CONCLUSION

Kanikaynar has failed to show that the New Mexico Court of Appeals' decision was contrary to or an unreasonable application of clearly established law. Accordingly, the district court's denial of his habeas corpus petition is **affirmed**.